764 So.2d 1149 (2000)
RONALD ADAMS CONTRACTOR, INC.
v.
CITY OF NEW ORLEANS and New Orleans Aviation Board.
No. 99-CA-1064.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 2000.
Writ Denied September 22, 2000.
*1150 John I. Hulse, IV, Hulse & Wanek, New Orleans, Louisiana, Counsel for Plaintiff-Appellant, Ronald Adams Contractor, Inc.
Ernest L. Jones, Elie, Jones & Associates, New Orleans, Louisiana, Counsel for Defendants-Appellees, the City of New Orleans and New Orleans Aviation Board.
(Court composed of Chief Judge ROBERT J. KLEES, Judge MOON LANDRIEU, and Judge PATRICIA RIVET MURRAY).
KLEES, Chief Judge.
Ronald Adams Contractor, Inc., filed the instant lawsuit for negligence and breach of contract against the City of New Orleans and the New Orleans Aviation Board. Following a trial on the merits, the trial court dismissed plaintiffs lawsuit. This appeal followed.
On July 17, 1991, the New Orleans Aviation Board (NOAB) advertised for public bid for certain work to be performed for a General Aviation Apron and Connector Taxiway complex at the airport. Ronald Adams Contractor, Inc. (RACI) submitted a bid to perform site preparation for the taxiway complex. The RACI bid offered to perform the requested work in 275 days with a start date of November 1, 1991 and completion date of August 2, 1992 for a total bid price of $11,050,375.54. The bid acknowledged that RACI would be charged liquidated damages for each day over 275 that the project remained incomplete.
On September 24, 1991, the project manager for NOAB sent a letter to RACI advising that NOAB had approved awarding the contract to RACI. The letter also advised RACI that it "should not proceed with any commitment until it received a notice to proceed from the NOAB." The letter further requested that RACI extend its bid until November 14, 1991.
RACI issued a letter dated September 25, 1991 agreeing to extend its bid until November 14th. On October 4, 1991, RACI was notified that the contract was ready to proceed, and on October 10, 1991, Ronald Adams signed the contract and supplied a performance bond. Mr. Adams did not witness anyone from the NOAB or from the City of New Orleans sign the contract on this date.
On November 11, 1991, after the contract had been executed by RACI, NOAB requested that RACI extend its bid until November 30th, which RACI agreed to do. In response to other requests, RACI extended its bid to December 20, 1991 and January 31, 1992. These bid extensions were a result of a dispute with the City of Kenner which prevented the issuances of necessary permits to begin the work. RACI was aware of this dispute.
During this period of time, RACI began its organization and preparation for work to be performed pursuant to the contract. Jerome Paul Benoit, an engineer employed by RACI, testified at trial that following notification of the award of the contract, RACI began to obtain prices from subcontractors *1151 and began working with various subcontractors for planning and scheduling. RACI located a sandpit to store materials and obtained materials from other projects and sources. In addition, RACI sent to NOAB numerous submittal documents for electrical and lighting protection work for the project. Due to the size and nature of the project, RACI was preparing to mobilize immediately upon receiving the notice to proceed from NOAB.
By letter dated January 7, 1992, counsel for RACI requested return of the contract to RACI and the issuance of a notice to proceed. In this letter, counsel for RACI also informed the NOAB that the delay in the start date of the project was causing economic damage to RACI.
On February 21, 1992, the City Notary transmitted to RACI a fully executed duplicate original of the signed contract.
On March 13, 1992, RACI requested an adjustment in the contract time because the delay in the start date of the contract would result in unfavorable weather conditions. As a result of this request, NOAB issued a contract modification granting RACI an additional 13 days to complete the work, but due to other changes, the modification resulted in a net decrease in the contract time, establishing a new contract completion date of December 16, 1992. In this contract modification, the NOAB also approved an increase in the total contract price of $232,863.38 for the construction of an alternate haul route by RACI. Compensation for construction of the haul route is not part of RACI's claims asserted herein.
On March 16, 1992, NOAB gave RACI the "Notice to Proceed" under the contract. The contract was to begin on March 19, 1992 and completion was established as December 16, 1992. RACI and NOAB agreed that the work was substantially completed by December 16, 1992, and thus RACI was not liable for liquidated damages. However, due to a hurricane and other severe and unexpected weather complications, final inspection of the completion of the project did not occur until February 3, 1993.
RACI contends that pursuant to the provisions of the contract, it is entitled to compensation for the increases in the cost of the performance of the contract due to the delays in the start of the work. RACI argues that if it had not been for the several month delay in issuing the notice to proceed, RACI would have been finished with the entire contract before the weather adversely affected its work progress.
RACI's claim has several components. First, RACI is claiming additional costs for equipment and personnel on standby resulting from the late notice to proceed, for a total cost of $309,124.04. Secondly, RACI is seeking additional costs resulting from loss of productivity caused by working in a different set of climatic conditions, for a total cost of $253,210.18. RACI also claims $2,741.40 for additional insurance and $5,000.00 for the outstanding retention.
The trial judge, in her reasons for judgment, resolved these claims as follows:
This Court finds that the first claim fails. RACI was under no obligation to continue to extend the contract. Once it did so, there was no obligation on the part of NOAB to pay RACI's costs. RACI was instructed not to proceed with any commitments until it received a notice to proceed.... As for the claim for loss [sic] productivity due to inclement weather, the contract provided for time extensions which are not compensable. There is nothing in the contract allowing RACI to be compensated monetarily for any delay due to bad weather.
On appeal, RACI contends that the trial judge erred in failing to consider the provisions of the contract, which allow for compensatory damages. In support of its argument, RACI relies on Article 19 of the General Provisions Section of the Contract which provides in pertinent part:

SUSPENSION OF WORK

*1152 A. The PM may order the Contractor in writing to suspend, delay, or interrupt all of any part of the Work for such period of time as NOAB may determine to be appropriate for the convenience of the NOAB.
B. Upon receipt of the order, the Contractor shall immediately comply with its terms and take all reasonable steps to minimize incurring costs allocable to the Work covered by the order during the period of work stoppage.
C. If the performance of all or any part of the Work is, for an unreasonable period of time, suspended, delayed, or interrupted by (1) an act of the NOAB in the administration of this contract, or (2) by the NOAB's failure to act within the time specified in this contract (or if no time is specified, within a reasonable time), an adjustment shall be made for any increase in cost of performance of this contract (excluding profit) necessarily caused by such unreasonable suspension, delay, or interruption, and the Contract modified in writing accordingly. However, no adjustment shall be made under this Article for any suspension, delay, or interruption to the extent (1) that performance would have been suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or (2) for which an equitable adjustment is provided for or excluded under any other provision of this Contract.
RACI contends that the contract in this case was executed on October 10, 1991, and NOAB's failure to issue a notice to proceed within thirty days of this date constitutes a suspension of the work by NOAD. RACI argues it is entitled to an adjustment for increases in costs of performance of the contract pursuant to Article 19. RACI contends that although it agreed to extend its bid on the contract, it did not agree to waive its ability to make a claim for damages due to unreasonable delay under the contract.
However, the record in this case fails to support RACI's contention that the notice to proceed was not timely issued. The Public Bid Law requires issuance of a Notice to Proceed within thirty days of execution of the contract. LSA-R.S. 38:2216. Although Ronald Adams signed the contract on behalf of RACI on October 10, 1991, records shows that representatives from the City were not present on this date, and RACI was aware the contract was not executed by the City at this point. In fact, RACI realized they did not have a fully executed contract when they requested the document from NOAB in January 1992.
The fully executed contract was not returned to RACI until February 21, 1992. The contract was not perfected until this date. The notice to proceed was issued within thirty days of the date the executed contract was returned to RACI, and we fail to find that NOAB failed to act within the time specified in the contract so as to invoke the provisions of Article 19.
In addition, the record clearly shows that the cause of the delay was not attributable to NOAB. The City of Kenner prohibited the use of city streets necessary for hauling materials and equipment for the work site and NOAB attempted to obtain a permit from the City for the use of this street. When this attempt proved unsuccessful, NOAB retained RACI to build a haul road to meet its purposes. The record thus shows that no action of NOAB caused the delay in the issuance of the notice to proceed, and the trial court was not clearly wrong in finding that RACI failed to prove entitlement to damages under the contract.
Further, the record indicates that RACI was fully aware of the delay in the project and voluntarily agreed to extend its bid for the work on four separate occasions. *1153 Jerome Benoit, an engineer employed by RACI, testified that he was aware that the City of Kenner had prohibited large trucks from using the Kenner street designated for hauling dirt and sand. Although RACI contends that the bid documents provided that the start date was November 1, 1991, on the day after the contract was awarded to RACI, RACI gave written extension of its bid to November 14, 1991. Thus, RACI was aware of the delay in the start of the project and consented to the delay by ultimately extending its offer through January 31, 1992. Under the circumstances presented here, we find no breach of the terms of the provisions of the contract as contained in Article 19.
The record in this case indicates that the delay in completing this project and RACI's damages as a result thereof were caused by the abnormal weather conditions which existed in the latter part of 1992 and the early part of 1993. RACI contends in hindsight that had the notice to proceed been issued earlier by NOAB, the work would have been completed by RACI before the onset of abnormal weather conditions. However, this does not form a basis for a claim against NOAB where there was no evidence presented that the delay in issuing the notice to proceed was due to an action or a failure to act on the part of NOAB. Rather, the severe abnormal weather which occurred during this period of time was not anticipated or expected by any of the parties.
Finally, we note, as did the trial judge, that the Special Provisions Section of the contract (Article 4.6.5) clearly provides that time extensions granted for abnormal weather are not compensable. Although RACI did not ask for a time extension due to the abnormal weather because the project was found to be substantially completed by December 16, 1992, this provision of the contract nevertheless supports the trial court's ruling that RACI had no contractual basis to be compensated for the delay in completion of this project due to the abnormal weather that occurred therein.
Finally, RACI seeks to recover a retainage of $5,000.00 paid to NOAB. We find RACI was clearly entitled to return of this retainage, the trial court erred in failing to render this award. We amend the judgment to order NOAB to return to RACI the $5,000.000 retainage fee.
Accordingly, for the reasons assigned herein, we find no error of the trial court dismissing RACI's claim for damages. The judgment of the trial court is amended to provide for a return of RACI's retainage fee. In all other respects, the judgment is affirmed. Appellant is to bear all costs of this appeal.
AMENDED AND AS AMENDED AFFIRMED.
LANDRIEU, J., CONCURS IN THE RESULT.